# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 18, 2013 Session

## STEVE DICKERSON ET AL. V. REGIONS BANK ET AL.

### Appeal from the Chancery Court for Williamson County
No. 35580     Robbie T. Beal, Judge

_____

### No. M2012-01415-COA-R3-CV - Filed March 19, 2014

_____

Plaintiffs, husband and wife, filed this action on February 17, 2009, to quiet title to property they own in Williamson County, Tennessee. At issue was a Deed of Trust that secured a 1997 promissory note, with an original maturity date in 1998, executed by a South Carolina limited liability company of which the plaintiff husband was a member. Plaintiffs asserted, *inter alia*, that the statute of limitations for the 1997 note and deed of trust had lapsed; therefore, the deed of trust encumbering their property should be released. Defendant Beta, LLC, filed a counterclaim for judicial foreclosure asserting it was the assignee of an October 8, 1998 renewal note with a maturity date of October 1999, the maturity date of which was subsequently extended to October 2000 pursuant to a Change in Terms Agreement executed in October 1999. It is based on the Change in Terms Agreement that Beta insists the statute of limitations had not lapsed and it is entitled to enforce the deed of trust. Although Beta was unable to produce an original or photocopy of an October 1998 renewal promissory note or evidence that complied with Tenn. Code Ann. § 24-8-101 to prove it was a lost negotiable instrument, the trial court held that a copy of the 1999 Change of Terms Agreement was sufficient to established the existence of the October 1998 renewal note and the extension of the maturity date to 2000; thus the statute of limitations had not run and Beta was vested with the right to enforce the deed of trust. Therefore, the court dismissed Plaintiffs complaint to quiet title and ruled in favor of Beta on the issue of foreclosure. On appeal Plaintiffs contend that the evidence was insufficient to support the court's rulings. Particularly, Plaintiffs contend the trial court erred in finding that the Change in Terms Agreement dated October 8, 1999, was sufficient to establish Beta's claims under an October 1998 promissory note of which there is no copy. We have determined the trial court erred in finding that the evidence was sufficient to satisfy Beta's burden of proof as the foreclosing party. We, therefore, reverse the judgment of the trial court and remand this matter for further proceedings consistent with this opinion, including a determination of the specific relief to which Plaintiffs may be entitled.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Reversed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, J.J., joined.

Daniel L. Wischof, Franklin, Tennessee, for the appellants, Steve Dickerson and Deborah Dickerson.

W. Kennerly Burger, Murfreesboro, Tennessee, for the appellees, Beta, LLC, and Sound Marketing, LLC.

## OPINION

Plaintiff Steve Dickerson is one of five individuals who, in 1997, founded Sound Marketing, LLC ("Sound Marketing"), a South Carolina limited liability company, to engage in a multi-level marketing business selling compact discs. On October 10, 1997, Sound Marketing borrowed $500,000 from Spartanburg National Bank pursuant to a promissory note to capitalize the company. The note was executed on behalf of Sound Marketing by Wayne Plylar and Darvin Shoemaker, both founding members, who were authorized by the members of Sound Marketing to execute the note on behalf of Sound Marketing. The due date of the original note was April 8, 1998.

Each member was personally liable for a pro rata share of the debt, and some of the members executed deeds of trust as collateral for their respective obligations. Concurrent with the execution of the 1997 note, Steve Dickerson and his wife Deborah ("Plaintiffs") executed a Deed of Trust, that encumbered a thirteen acre tract of unimproved land they owned in Williamson County; the deed of trust was duly recorded and its authenticity is not at issue. By its terms, the deed of trust secured the note executed by Sound Marketing and "all modifications or extensions thereto, all renewals thereof, and all replacement notes thereof."

Soon after the note was executed, Spartanburg National Bank was acquired by Regions Bank. On April 8, 1998, Sound Marketing executed a renewal of the note with Regions Bank and the maturity date was extended six months to October 6, 1998.

As time passed, it became apparent that the marketing model for Sound Marketing was flawed and it ceased doing business. Over the next three years, Mr. Plylar states that he personally paid interest on the note to avoid default. In 2002, Mr. Plylar corresponded with the members advising them that he would no longer pay the note and demanded contributions from the members.

On September 18, 2006, Mark M. Wright, a Brentwood, Tennessee attorney, writing on behalf of Sound Marketing, LLC, made a written demand on Plaintiffs for payment of the note, stating they were in default and threatening foreclosure on the property secured by the deed of trust. In a letter dated September 25, 2006, J. Timothy Street, a Franklin, Tennessee attorney, responded on behalf of Plaintiffs, disputing any liability on the note. In the same letter, Mr. Street requested Mr. Wright to forward proof of the debt and, in addition, "the name, address, and phone number of the current note holder."

By letter dated January 3, 2007, Mr. Street also sent a letter to Regions Bank demanding release of the deed of trust, citing Tenn. Code Ann. § 66-25-102, which governs liability for one's failure to release a deed of trust that has been satisfied.

On March 6, 2007, attorney Mark Wright, corresponding on behalf of his client Sound Marketing, provided Plaintiffs with copies of the following documents:

Regions Bank Business Loan
Loan Authorization signed by Dickersons
Assignment of Note by Regions to Sound Marketing, LLC
Deed of Trust

Mr. Wright's letter also stated: "As indicated on the documents, this note is currently held by Sound Marketing, LLC, 3501 Rutherford Road Ext., PO Box 68, Taylors, SC 29687."

On August 9, 2007, Mr. Street, again acting on behalf of Plaintiffs, wrote attorney Wright insisting that the deed of trust had been fully extinguished and, therefore, it should be released as outlined in his January 3, 2007 letter. Mr. Street also stated:

If it is your position that the obligation secured by said Deed of Trust has not been satisfied in full, please provide documentation in support thereof to my office at the above address. In our letter of June 18, 2007, we asked for documentation which has yet to be forwarded to this office. If we do not hear from your office within the next 30 days, we will pursue our remedies under TCA 66-25-102(b).

More than one year later, on December 1, 2008, Mr. Street again wrote Mr. Wright stating, as before, Plaintiffs insist the obligation secured by the deed of trust encumbering their property has been fully extinguished and stating that his clients were "making their third

demand for release of the Deed of Trust." He also restated his position that he had not received the specific documentation requested in his June 18, 2007 letter.[1]

On February 17, 2009, Plaintiffs commenced this action to quiet title to their property by filing a Verified Petition for Declaratory Judgment in the Chancery Court for Williamson County against Regions Bank, Sound Marketing, LLC, and Beta, LLC,[2] and the trustee under the deed of trust. The only defendants relevant to this appeal are Sound Marketing and Beta.[3]

Plaintiffs asserted the following relevant facts in the complaint:

6.   On or about October 10, 1997, Petitioners Steve and Deborah Dickerson executed a Deed of Trust which encumbered real estate owned by them located in Williamson County, Tennessee. The Deed of Trust is of record in Deed Book 1582, Page 294, Register's Office for Williamson County, Tennessee. A copy of the Deed of Trust is attached hereto as Exhibit 1.

7.   The Deed of Trust secured a Promissory Note executed by Sound Marketing, LLC in favor of Regions Bank. The loan date of the Note was April 8, 1998 and has a maturity date of October 6, 1998. A copy of the Promissory Note is attached hereto as Exhibit 2.

8.   On September 18, 2006, Sound Marketing, LLC, through its counsel, made demand on Petitioners for payment of the Promissory Note denominated as Exhibit 2, alleging that Petitioners were in default of said Note and threatening foreclosure of the subject real estate. A copy of the collection letter is attached hereto as Exhibit 3.

---

[1]Mr. Street's correspondence to Mr. Wright dated August 9, 2007 and December 1, 2008, were attached to the Verified Complaint but were not introduced into evidence. We have mentioned them to provide a more complete explanation of the activities of the parties prior to suit; however, we do not consider them as evidence.

[2]Although Mr. Wrights' letter to attorney Street dated March 6, 2007, stated that one of the enclosures was the "Assignment of Note by Regions *to Sound Marketing, LLC*," the Assignment states that Beta, LLC, not Sound Marketing, was the assignee.

[3]The record does not expressly state that Regions Bank was voluntarily dismissed, however, the briefs and oral argument suggest Regions Bank was voluntarily dismissed and it is acknowledged that the trustee is merely a nominal party; neither is a party to this appeal.

9. In response to the communication received from the debt collector for Sound Marketing, LLC, Petitioners responded by letter dated September 25, 2006, in which they informed Sound Marketing, LLC that they disputed any liability on the Promissory Note. A copy of the communication is attached here to as Exhibit 4.

10. In follow up to the demand made by Sound Marketing, LLC, Plaintiffs forwarded a letter to Regions Bank pursuant to T.C.A. § 66-25-102 demanding release of the Deed of Trust. A copy of the letter and the return receipt evidencing delivery to Regions Bank is attached hereto as Exhibit 5.

11. Thereafter, on March 6, 2007, Sound Marketing, LLC forwarded to counsel for the Petitioners a letter with documents enclosed. The documents attached to the letter included a copy of the Promissory Note denominated as Exhibit 2.

12. The letter dated March 6, 2007, also stated that enclosed therein were copies of the assignment of the Note by Regions to Sound Marketing, LLC. However, no assignment of the Note was included in the package. A copy of the letter dated March 6, 2007 is attached hereto as Exhibit 6.

13. On information and belief, the Promissory Note executed by Sound Marketing, LLC dated April 8, 1998, included herein as Exhibit 2, has been paid in full and is no longer of any force and effect.

14. Thereafter, on August 9, 2007, Plaintiffs forwarded to counsel for Sound Marketing, LLC a second demand letter pursuant to T.C.A. § 66-25-102(b), demanding for the second time that the Deed of Trust encumbering their real property be released. A copy of the letter is attached hereto as Exhibit 7.

15. Because the return receipt was not returned to the Petitioners, on December 1, 2008, they had mailed a third demand for release pursuant to T.C.A. § 66-25-102(b), a copy of the letter and return receipt are attached hereto as Exhibit 8.

16.    To date, the Deed of Trust encumbering Petitioner's real property remains unreleased despite repeated requests by Plaintiffs to Respondents to remove same.

Based upon the above facts, Plaintiffs asserted that the note executed by Sound Marketing matured on October 6, 1998, and pursuant to the ten-year statute of limitations in Tenn. Code Ann. § 28-2-111(a), the deed of trust they executed to secure the note was time barred and should be discharged.

Sound Marketing and Beta filed a joint answer and a counter-claim for enforcement of the deed of trust by judicial foreclosure. Sound Marketing and Beta asserted that, when the original note matured, the loan was extended by a renewal promissory note dated April 8, 1998, with a maturity date of October 8, 1998. Defendants also asserted that following the maturity of this note on October 6, 1998, another renewal note was entered on October 8, 1998. Although no copy of the purported October 8, 1998 renewal note is in the record, Defendants asserted that the existence of such note is evidenced by the Change in Terms Agreement dated October 8, 1999, which states the maturity date was extended to January 8, 2000. Sound Marketing and Beta further asserted that the note and deed of trust were assigned by Regions Bank in 2003 to Beta (not Sound Marketing as represented in Mr. Wright's March 6, 2007 letter).[4]

The case was tried on April 9, 2012; the testimony was limited to two witnesses, Steve Dickerson and Wayne Plylar, and several documents were admitted into evidence either by stipulation or through the witnesses. No original documents evidencing the note, or any renewal thereof, or assignment were admitted into evidence; only photocopies. The only documents entered into evidence that related to the underlying indebtedness at issue included:

(1) Photocopy of the Sound Marketing - Spartanburg National Bank "Promissory Note" dated October 10, 1997, with a maturity date of April 8, 1998, in the principal amount of $500,000;

(2) Photocopy of the Sound Marketing - Regions Bank "Promissory Note" dated April 8, 1998, with a maturity date of October 6, 1998, in the principal amount of $500,000 (this was the renewal of Sound Marketing's original note with Spartanburg National Bank dated October 10, 1997);

---

[4]Neither Beta or Sound Marketing sought to sue on the note, merely to enforce the deed of trust.

(3) Photocopy of the "Change in Terms Agreement" dated October 8, 1999, between Sound Marketing and Regions Bank (no note or photocopy of a note was attached to the Change in Terms Agreement);[5] and

(4) Photocopy of the "Assignment of Note and Deed of Trust" from Regions Bank to Beta, LLC, assigning the Deed of Trust executed by Deborah and Steve Dickerson dated October 10, 1997, together with the indebtedness in the original principal sum of $500,000 and the Note evidencing the indebtedness; the assignment was dated May 15, 2003.[6]

Wayne Plylar testified that he was a founding member of Sound Marketing, he served as its president, and he executed the note on behalf of Sound Marketing. He also testified that he was the manager of Beta, LLC, which was also a South Carolina limited liability company. He explained the members of Beta were his wife and children, and while he served as the manager of Beta, he was not a member.

As for the original of the promissory note, the change in terms agreement and the assignment, Mr. Plylar testified that he did not have an original of any of the documents and he had no idea as to who, if anyone, had the originals. He also stated he did not know if he

---

[5]The missing document, a purported **October 6, 1998** renewal note [not to be confused with the **April 8, 1998** note] that purportedly extended the maturity date to 1999, of which there is no photocopy in the record, would logically have been identified chronologically between items (2) and (3). Whether a purported October 6, 1998 renewal note ever existed is discussed in detail later in this opinion.

[6]The May 15, 2003 Assignment reads in pertinent part:

For Value Received, Regions Bank, hereby sells, assigns, transfers, sets over and conveys unto Beta, LLC, a South Carolina limited liability company, whose address is 955 Nazareth Church Road, Moore, SC, 29369, its successors and/or assigns, that certain Deed of Trust executed by Deborah Dickerson, Steve Dickerson, Brett Q. Barry and Erin A. Barry, dated October 10, 1997, and recorded in Book 1582, page 294, Register's Office of Williamson County, Tennessee and Book 10662, page 40, Register's Office of Davidson County, Tennessee, together with the real property therein described; and also the indebtedness in the original principal sum of $500,000.00 as described in said Deed of Trust, and secured thereby, the Note evidencing said indebtedness having this day been transferred and assigned to the said assignee, Beta, LLC, together with all right, title and interest in and to the said Deed of Trust, the property therein described and the indebtedness secured; and the said assignee, Beta, LLC, is hereby subrogated to all rights, powers, privileges and securities vested in the Trustee, James T. Oglesby of Williamson County, under and by virtue of the aforesaid deed of trust.

ever had the original of any note. The parties also stipulated that neither Mr. Plylar nor Beta had any original documents evidencing the note or any extensions or amendments of the notes executed by Sound Marketing.

Notwithstanding the letters from Mr. Wright in 2007 and 2008, wherein he represented that Sound Marketing owned the note, Mr. Plylar testified that Beta acquired the note from Regions Bank by written assignment dated May 15, 2003, pursuant to the Assignment of Note and Deed of Trust ("the Assignment"). The Assignment identified the original note of $500,000 and the deed of trust executed by Plaintiffs; however, no original or photocopy of a note was attached to the Assignment. Mr. Plylar testified that he did not recall whether he or his attorneys ever received an original note. Nevertheless, he said he had looked for it and it could not be located.

On direct examination, Mr. Plylar testified that a personal loan was obtained in his wife's name to pay off the note and that he requested Regions Bank to assign the note to Beta, LLC, since Beta was a family company. On cross-examination he was asked about the particulars of the bank transaction and the documentation, specifically, what happened to the original documents, including the note. Pertinent portions of that testimony are as follows:

Q. And you [Mr. Plylar] don't recall whether the bank ever surrendered a Note or a Change in Terms Agreement to you or a Change in Terms Agreement to you or endorsed it over to you or Beta or anybody else, do you?

A. I don't--I have--I have supplied what I have.

Q. Okay. Is it your testimony that that Note wasn't marked "paid in full"?

A. I do not remember those details.

Q. Okay. But you're not coming here today with a Note that's endorsed on the back paid to the order of Beta, LLC? Well, you don't have the original Note?

A. I don't have the Note.

Q. Okay. You don't even have a copy of the Note that's supposed to have been changed by the Change in Terms Agreement?

A. I have--you have what I have.

A photocopy of the Change in Terms Agreement dated October 8, 1999, was introduced and made an exhibit. The Change in Terms Agreement identified Sound Marketing as the "borrower" and Regions Bank as the "lender" of a loan in the principal amount of $500,000.00. The following is excerpted from the Change in Terms Agreement:

Principal Amount: $500,000.00

DESCRIPTION OF EXISTING INDEBTEDNESS. The Promissory Note from Sound Marketing, LLC to Lender dated October 8, 1998 in the amount of $500,000.00.

DESCRIPTION OF COLLATERAL. The Note is secured by . . . a Deed of Trust dated October 10, 1997 from Steve and Deborah Dickerson and Brett Q. and Erin A. Barry on property and improvements known as 3133 Boulder Park Drive, Nashville, Tennessee and Tracts 4 and 5 Eudaily-Covington Road, Williamson County, Tennessee[.]

DESCRIPTION OF CHANGE IN TERMS. The maturity date shall be extended to January 8, 2000.

***

CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect[.]

PRIOR NOTE. The Promissory Note from Sound Marketing, LLC to Lender dated October 8, 1998.

Mr. Plylar's testimony on direct examination concerning the origin of the Change in Terms Agreement was very succinct:

Q. What is the origin and what's your description of the history of that?

A. That is the -- let's see. I think that's the extension to -- yeah, that's the [1999] loan extension.

***

Q. In between that document [the 1999 Change of Terms Agreement] and Exhibit 1 [the original promissory Note], were there other intervening renewals?

A. I don't -- there probably were. I don't –

Q. My next question is: Do you have copies of all of those?

A. I don't.

On re-direct, Mr. Plylar's counsel then attempted to clarify, via a confusing compound question:

Q. Have you conducted a diligent intense search from the time we started this proceeding to try to locate the originals of these documents that you've been provided copies of? You flat don't have them and don't know where to get them?

A. I don't.

Q. You don't remember sending them to these other attorneys; do you remember giving them to any other members, any slight memory about where the -- first of all, were the originals ever in your possession?

A. I can't say for sure, but I -- that's a good point, you know. I may well have sent them to --

Q. You're sure you don't have them and you couldn't get them from any other --

A. No. I've got files this thick, and I've been through them entirely. But that is a possibility that I did --

At the conclusion of the bench trial the court explained that the real issues in regard to the deed of trust were whether "there is an enforceable obligation and is the person enforcing it the right person to enforce it." The trial court then ruled in favor of Beta explaining that the decision was based, *inter alia*, on findings that the October 1999 Change of Terms Agreement sufficiently established the existence of an October 6, 1998 renewal note; that the note and deed of trust were assigned to Beta thereby vesting Beta with the right to enforce the deed of trust; that the Change in Terms Agreement extended the maturity of

-10-

the note until January 8, 2000; that the ten-year statute of limitations had not lapsed. The relevant portions of the ruling, as they are stated in the final order, read as follows:

4. Although the Dickersons, in their original Petition, aver that the ten-year limitation of T.C.A. § 28-2-111 began to run upon the maturity of the Second Note on October 6, 1998, the Court rejects this argument because it finds that the final maturity of the latest Note secured by the Deed of Trust was January 6, 2000. On October 8, 1999, Sound Marketing executed a "Change in Terms Agreement" in favor of Regions Bank, specifically referencing the subject deed of trust as collateral, and extending until January 6, 2000, the maturity date of a Note from Sound Marketing for $500,000.00 dated October 8, 1998. Although no party produced the original or a copy of an October 8, 1998 Note, the Court finds that the "Change in Terms Agreement" is sufficient to establish an October 8, 1998 Note.

5. The October 8, 1998 Note was negotiated to Beta, LLC. On May 15, 2003, an instrument captioned "Assignment of Note and Deed of Trust" was notarized by a Spartanburg, S.C. notary. The instrument provides in pertinent part that[:]

> Regions Bank, hereby sells, assigns, transfers, sets over and conveys unto Beta, LLC, a South Carolina limited liability company * * * that certain Deed of Trust executed by Deborah Dickerson, Steve Dickerson, Brett Q. Barry and Erin Barry, dated October 10, 1997 . . . and also the indebtedness in the original principal sum of $500,000.00 as described in said deed of trust, and secured thereby, the Note evidencing said indebtedness having this day been transferred and assigned to the said assignee, Beta, LLC[.]

The Court finds that this instrument negotiates the October 8, 1998 Note to Beta, LLC.

6. By virtue of said negotiation of the October 8, 1998 Note, Beta, LLC is vested with the right to enforce the Dickersons' Deed of Trust to the extent of the $98,000.00 security given thereby.

7. Beta, LLC counterclaimed in this action on March 25, 2009, more than ten years after the maturity of the Second Note on October 6, 2008, but less than

-11-

ten years after the January 6, 2000 maturity of the October 8, 2008 note as extended by the "Change in Terms Agreement."

## ISSUES

Plaintiffs filed a timely appeal and present three issues for our review. We have determined that two of the issues are dispositive of this appeal. These issues are:

1. In the absence of the proof of the existence, terms or disposition of any note that may have been in existence after October 6, 1998, the trial court erred in finding that a "Change in Terms Agreement," dated October 8, 1999, is sufficient to establish the existence, terms, and disposition of an October 8, 1998 note.

2. In the absence of any proof of negotiation by indorsement or attached allonge of an undischarged note, the trial court erred in holding that a separate "Assignment of Note and Deed of Trust" negotiates the October 8, 1998 note to Beta, LLC.

## STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is de novo and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *See Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness and "we must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). Issues of law are reviewed de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

A presumption of correctness does not attach to mixed questions of fact and law. *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995) (citing *Murdock Acceptance Corp. v. Jones*, 362 S.W.2d 266, 268 (Tenn. Ct. App. 1961)). Although a presumption of correctness attaches to the trial court's findings of fact, we are not bound by the trial court's determination as to the legal effect of its factual findings, nor by its determination of a mixed question of law and fact. *Travelers Insurance Co. v. Evans*, 425 S.W.2d 611, 616 (Tenn.

1968); *Sullivan v. Green*, 331 S.W.2d 686, 692-93 (Tenn. 1959).Our standard of review of rulings on mixed questions of fact and law is de novo with a presumption of correctness extended only to the trial court's findings of fact. *Abdur'Rahman* v. Bredesen, 181 S.W.3d 292, 305 (Tenn. 2005)(citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)).

## ANALYSIS

## I. DEEDS OF TRUST

A deed of trust is an instrument which secures with real property the payment of a debt, typically evidenced by a promissory note. 59 C.J.S. *Mortgages*, §§15 and 204 (2013). Promissory notes secured by deeds of trust are generally considered negotiable instruments governed by Article 3 of the Uniform Commercial Code.

It is a maxim of the law that the "security follows the debt." Douglas J. Whaley, *Mortgage Foreclosures, Promissory Notes, and the Uniform Commercial Code*, 39 W. ST. U. L. REV. 313, 326-27. The United States Supreme Court established this fundamental principle as early as 1873, stating:

> The note and mortgage are inseparable; the [note] as essential, the [mortgage] as an incident. An assignment of the note carries the mortgage with it, while an assignment of the [mortgage] alone is a nullity . . . . The mortgage can have no separate existence. When the note is paid the mortgage expires. It cannot survive for a moment the debt which the note represents.

*Id*. at 326-27 (quoting *Carpenter v. Longan*, 83 U.S. 271, 274 (1872)).

This principle has been reiterated by the Tennessee Supreme Court, which held: "[t]he policy of the law is to treat the note as the principal thing and the mortgage as the incident -- the transfer of the note secured as a transfer *pro tanto* of the incident, the lien of the mortgage." *W.C. Early Co. v. Williams*, 186 S.W. 102, 103-04 (Tenn. 1916).

## II. JUDICIAL FORECLOSURES

The almost exclusive means of foreclosure in the State of Tennessee has been non-judicial, as outlined in Tennessee Code Annotated §§ 35-5-101 *et. seq*. Nevertheless, judicial foreclosures in Tennessee, although rarely invoked due to the ease of private sale under Tennessee deeds of trust, are authorized. *See* Tenn. Code Ann. § 21-1-803; *see also* William H. Inman, *Gibson's Suits in Chancery*, §§ 471-73, at 502-506 and 513-514 (7th ed., 1988) (hereinafter "Inman").

A lienor is authorized to file a complaint in chancery court and have the property subject to the lien sold in satisfaction of the indebtedness the lien secures. Inman, *supra,* at 502-06 and 513-14. Although no special form for judicial foreclosure is required, the promissory note is to be attached as an exhibit and made a part of the complaint. *Id*. If a particular jurisdiction permits both non-judicial or judicial foreclosure, the lender/mortgagee may elect which remedy to pursue. William M. Howard, Ph.D., Annotation, *Necessity of Production of Original Note Involved in Mortgage Foreclosure — Twenty-First Century Cases*, 86 A.L.R. 6TH 411 (2013) (citing *Guardian Depositors Corp. v. Powers*, 296 N.W. 675, 678 (Mich. 1941)). Even if the deed of trust contains a power of sale, the lender/mortgagee may resort to foreclosure by judicial proceedings. *Id*. (*citing Carpenter v. Title Ins. & Trust Co*., 163 P.2d 73, 75 Dist. 1945).

Prior to 2007, foreclosure did not generate much appellate litigation. Dale A. Whitman & Drew Milner, *Foreclosing on Nothing: The Curious Problem of the Deed of Trust Foreclosure Without Entitlement to Enforce the Note*, 66 ARK. L. REV. 21, 22 (2013). In the wake of the post-2008 economic climate and housing market crisis, several jurisdictions have experienced significant foreclosure litigation as homeowners attempted to retain their homes. *Id*. One defense which arose is the so-called "show me the note" defense. Bradley T. Borden, David J. Reiss & W. KeAupuni Akina, *Show Me the Note!*, 19 NO. 1 WESTLAW J. BANK LENDER LIABILITY 1 (2013). In relying upon this defense, homeowners sought to forestall or revoke foreclosure by requiring the foreclosing party to prove its right to foreclosure via proof of both the mortgage/deed of trust and the underlying promissory note. *Id*. Although the states appear divided on this issue, some of the controversy is explained by context, namely whether the jurisdiction is called upon to evaluate a non-judicial versus judicial foreclosure. *Id* at 1-2*.* The states which decline to recognize "show me the note" typically do so in the setting of non-judicial foreclosure action. *Id.* at 1-2 and 8-9; *See e.g. Hogan v. Wash. Mut. Bank*, 277 P.3d 781 (Ariz. 2012), *Debrunner v. Deutsche Bank National Trust Co.*, 138 Cal. Rptr. 3d 830 (Cal. Ct. App. 2012), *Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743 (N.D. Tex. 2013) (applying Texas law), *Fedewa v. J.P. Morgan Chase Bank*, 921 F. Supp. 2d 504 (E.D. Va. 2013) (applying Virginia law), *Hafiz v. Greenpoint Morg. Funding, Inc.*, 652 F. Supp. 2d 1039 (N.D. Cal. 2009).

On the other hand, in a judicial foreclosure, it is axiomatic that the promissory note securing a mortgage or deed of trust must be produced and introduced into evidence. 58A C.J.S. *Mortgages* § 991 (2014); *Fair v. Kaufman*, 647 So.2d 167, 168 (Fla.2d Dist. Ct. App. 1994) (holding that to prevail in a foreclosure action the original note and mortgage must be introduced into evidence); *Republic Natl. Bank of N.Y. v. O'Kane*, 308 A.D.2d 482, (N.Y.2d App. Div. 2003) (holding that "[i]n an action to foreclose a mortgage, a plaintiff establishes

its case as a matter of law through the production of the mortgage, the unpaid note, and evidence of default"); *see also W.H. Downing v. First National Bank of Lake City*, 81 So.2d 486, 488 (Fla. 1955), *McKay v. Capital Resources Co. Ltd.*, 327 Ark. 737, 740-41 (Ark. 1997).

## III. ASSIGNMENT OF A NOTE

The parties acknowledge, and the court agrees, that the law of the State of South Carolina shall apply to issues regarding the promissory note, including the change in terms agreement and assignment of the note. This is because the 1997 promissory note, which was between a South Carolina limited liability company, Sound Marketing, and a South Carolina bank, expressly states that the note shall be governed by the laws of South Carolina. Thus, the validity, assignment, and enforceability of the note shall be determined according to South Carolina law.

As the issues pertain to the enforcement of the deed of trust, however, the parties and the court are also in agreement that the law of the State of Tennessee shall apply to issues regarding the deed of trust because it encumbers Williamson County real property.

### A. TITLE 36 OF THE CODE OF LAWS OF SOUTH CAROLINA

Title 36 of the Code of Laws of South Carolina, 1976 Annotated, codifies the Uniform Commercial Code for that state; Chapter 3 of that title applies to negotiable instruments. S.C. Code Ann. § 36-3-102 (2008).

The "negotiation" of a negotiable instrument is statutorily defined to mean "a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." S.C. Code Ann. § 36-3-201(a) (2008). Subsection (b) goes on to provide: "Except for negotiation by a remitter, *if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder*." S.C. Code Ann. § 36-3-201(b) (2008) (emphasis added).

The note at issue was payable to an identified person, Regions Bank; thus, under South Carolina law, negotiation of the Sound Marketing promissory note to Beta required "transfer of possession of the instrument" and indorsement by Regions Bank. S.C. Code Ann. § 36-3-204(a) (2008) defines "indorsement" to mean:[7]

---

[7] Subsection (c) of S.C. Code Ann. § 36-3-204 further states: "For the purpose of determining whether the transferee of an instrument is a holder, an indorsement that transfers a security interest in the instrument (continued...)

-15-

[A] signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (i) negotiating the instrument, (ii) restricting payment of the instrument, or (iii) incurring indorser's liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an indorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement. For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.

S.C. Code Ann. § 36-3-301 (2008) identifies *the person entitled to enforce a negotiable instrument* to be:

 (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 36-3-309 or 36-3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

S.C. Code Ann. § 36-3-309 (2008), referenced in the subsection immediately above, pertains to the enforcement of a lost, destroyed, or stolen instrument.[8] It provides in pertinent part:

(a) A person not in possession of an instrument is entitled to enforce the instrument if:

(1) the person seeking to enforce the instrument:

(A) was entitled to enforce the instrument when loss of possession occurred;[9] or

---

[7](...continued)
is effective as an unqualified indorsement of the instrument."

[8]We have determined that S.C. Code Ann. § 36-3-418(d), which is also referenced in the subsection immediately above, is not applicable; thus, it shall not be discussed.

[9]Prior to a 2008 amendment, S.C. Code Ann. § 36-3-309(a)(1) stated that a person not in possession
(continued...)

(B) has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred;

(2) the loss of possession was not the result of a transfer by the person or a lawful seizure; and

(3) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(b) *A person seeking enforcement of an instrument under Subsection (a)* [which pertains to a person *not* in possession of an instrument] *must* prove the terms of the instrument and *the person's right to enforce the instrument.* If that proof is made, Section 36-3-308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

(Emphasis added).

Based upon the foregoing South Carolina statutes, we have determined that the dispositive issue is whether Beta proved that it has the *right to enforce the lost instrument*, that being Sound Marketing's note. Therefore, *if* Beta proved that it has the right to enforce the lost instrument, then it is entitled to enforce the deed of trust incident thereto. *See* S.C. Code Ann. § 36-3-204(a) and (c) and § 36-3-301(i); *see also W.C. Early Co.*, 186 S.W. at 103-04 and Whaley, *supra*, at 326-27 (holding that the security follows the debt).

---

[9](...continued)
of an instrument is entitled to enforce the instrument if "the person was *in possession of the instrument and entitled to enforce it* when loss of possession occurred. . . ." (emphasis added). The words "in possession of the instrument and" were removed in the 2008 amendment to reject the reasoning in *Dennis Joslin Co., LLC v. Robinson Broad. Corp.*, 977 F. Supp. 491, 494 (D.D.C. 1997). The South Carolina statute now reads: "if the person seeking to enforce the instrument was entitled to enforce the instrument when loss of possession occurred. . . ." S.C. Code Ann. § 36-3-309(a)(1)(A).

## B. THE RIGHT TO ENFORCE THE LOST NOTE

Significantly, it is rare for any jurisdiction to permit judicial foreclosure without production of the promissory note. Borden, 19 NO. 1 WESTLAW J. BANK LENDER LIABILITY at 1-2 and 7-8. Indeed, production of the original promissory note has been called by one commentator the "golden rule of foreclosure." Whaley, *supra*, at 322. If the original note is not introduced, a satisfactory reason must be given for failure to do so. *Id*. at 321-22; William M. Howard, Ph.D., Annotation, *Necessity of Production of Original Note Involved in Mortgage Foreclosure -- Twenty-First Century Cases*, 86 A.L.R. 6TH 411 (2013).

It is undisputed that Beta does not have possession of the original promissory note; therefore, to prove that it is the "person entitled to enforce" the promissory note and deed of trust, Beta has the burden to provide a satisfactory reason for not being able to produce the original. *See W.C. Early Co.*, 186 S.W. at 103-04; Whaley, *supra*, at 326-27 (stating that the note is "the principal thing" and the deed of trust is "incident" to the note).

There is no evidence in this record concerning how, when, or under what circumstances the original of any of the promissory notes were lost. The only evidence concerning the missing notes came through the testimony of Mr. Plylar, which is of little to no value. All Mr. Plylar could say is that he does not have any of the originals, Beta does not have them, and he does not know if he or Beta ever had possession of any original note.

In addition to not having the original promissory note, Mr. Plylar testified that he did not have an original of any of the documents, including the change in terms agreement and the Assignment. Mr. Plylar also testified that Beta acquired the note and deed of trust from Regions Bank pursuant to the May 15, 2003 Assignment of Note and Deed of Trust; however, Mr. Plylar does not recall whether he received an original note. Therefore, he is unable to provide any evidence of the loss or destruction of the promissory note.

## IV. BETA'S BURDEN OF PROOF

The statutory burden of proof placed on Beta to establish the lost note appears in Tenn. Code Ann. § 24-8-101, which reads:

> Any lost instrument may be supplied by affidavit of any person acquainted with the facts, stating the contents thereof, as near as may be, and that such instrument has been unintentionally lost or mislaid, and is still the property of the person claiming under it, unpaid and unsatisfied.

The statute states that such proof may be supplied by affidavit but such proof may also be provided through competent testimony provided in court. *See Barr & Company, Inc. v. Commercial Union Ins. Companies*, 1997 WL 656386, at * 3 (Tenn. Ct. App. Oct. 22, 1997) (citing *Pearson v. McCallum*, 173 S.W.2d 150, 158 (Tenn. Ct. App. 1941) ("As to the sufficiency of the evidence, the law requires that the evidence offered to prove by parol the execution and the contents of a written instrument which is not produced shall be of the most satisfactory character, or what is known as clear, cogent and convincing evidence.")).

As the statute directs, Beta carried the burden to provide competent evidence, meaning testimony provided by a "person acquainted with the facts," who can state, *inter alia*, "that such instrument has been unintentionally lost or mislaid," and that the lost instrument "is still the property of the person claiming under it[.]" Although Beta contends that the note was still the property of Regions Bank when the note was purportedly assigned to Beta, Mr. Plylar is not a person "acquainted" with that fact and thus he is not competent to testify as to whether Regions Bank was the owner of the lost note when it was assigned to Beta. The only evidence concerning the lost note was provided by Mr. Plylar, but he does not recall ever seeing the original instrument, he does not know who lost it, and he does not know when it was lost. Thus, the record is devoid of any evidence regarding the circumstance under which the purported note was unintentionally lost or mislaid.

Moreover, the following excerpts from Mr. Plylar's testimony reveal the little value of his testimony to the ultimate issue. When asked on direct examination about the execution of the Change in Terms Agreement executed in 1999 that purportedly extended the maturity of the note to 2000, he said he recognized the document, but in response to the very next question, which asked about the origin and history of the document, he replied: "I think that's the extension to -- yeah, that's the loan extension," but he gave no response regarding the origin or history of the Change in Terms Agreement. The next question asked him about "other intervening renewals," referring to those between the Change in Terms Agreement and the original 1997 note, to which he stated: "I don't -- there probably were. I don't --." He then said he did not have copies of any such documents other than those already provided.

Mr. Plylar's testimony on cross examination is even more compelling. Mr. Plylar testified that he was the only person who would have dealt with Regions Bank about the notes or the assignment of the notes to Beta, but then he stated that he did not recall those events. When asked if he went to the bank and paid off the loan he stated: "It was -- it would have been at a closing, a typical closing, so I wouldn't -- it wouldn't have even been in a bank. It would have been in an attorney's office, most likely, not a bank." He was then asked if he recalled whether the bank ever surrendered a Note or a Change in Terms Agreement to him or endorsed the note over to Beta, him, or anybody else, to which he replied: "I don't -- I have -- I have supplied what I have." The next question to Mr. Plylar, which could be described as

the $500,000 question, was: "Is it your testimony that that Note wasn't marked 'paid in full'?" He answered that important question: "I do not remember those details." The next two questions and Mr. Plylar's answers were as follows:

> Q. But you're not coming here today with a Note that's endorsed on the back paid to the order of Beta, LLC? Well, you don't have the original Note?

> A. I don't have the Note.

> Q. You don't even have a copy of the Note that's supposed to have been changed by the Change in Terms Agreement?

> A. I have -- you have what I have.

For the foregoing reasons, we have determined that the evidence in this record is woefully inadequate to establish the facts or circumstances identified in Tenn. Code Ann. § 24-8-101.[10] Our conclusion is consistent with other cases that are instructive on the issue of the requisite proof necessary to prove a lost instrument such as a promissory note, including *Buckner v. Geodeker*, 45 S.W. 448, 449 (Tenn. Ch. App. 1897). The issue in *Buckner* was whether the evidence was sufficient to prove a lost instrument; specifically, whether there was sufficient evidence regarding *its loss and who possessed it at that time*. *Id.* The issue was based on the code in effect at the time, which stated: "any lost instrument may be supplied by affidavit of *any person acquainted with the facts*, stating the contents thereof as near as may be, and that *such instrument has been unintentionally lost or mislaid, and is still the property of the person claiming under it*, unpaid and unsatisfied." *Id*. The evidence at issue in *Buckner* was provided by affidavit and the court found the affidavit deficient for several reasons.

> In the first place, the word "unintentional" is omitted. It is stated that the notes have been misplaced or lost, but there is no statement that they were unintentionally lost or misplaced. In the next place, the statute requires that the

---

[10]There is other evidence in the record that undermines Beta's claim that it is entitled to enforce the deed of trust. Even the trial court found facts pertaining to the assignment of the note and deed of trust "suspicious" and "somewhat concerning to the court." For example, the assignment from Regions Bank to Beta was not on bank stationary; the bank was a South Carolina bank, but the assignment was prepared by a Williamson County, Tennessee title company; copies of the assignment provided by Mr. Plylar were different, in one copy the notary acknowledgment was blank, while in the other copy the name and title of the officer of the bank was written; the 2003 assignment of the note and deed of trust was not recorded until 2008, five years later. Like the trial court, we find some of the facts upon which Beta relies suspicious, but choose not to pursue that inquiry and rely on the analysis provided in this opinion.

affidavit shall state that the lost instrument is still the property of the person claiming under it, unpaid and unsatisfied. This affidavit fails to state this fact. The only statement is that Buckner & Co. received from Kate Geodeker these notes, and there is no intimation that the notes were still the property of H. B. Buckner, who brought the suit thereon, or of Buckner & Co.[.]

*Id.*[11]

S.C. Code Ann. § 36-3-309(a) provides, in pertinent part, that a person not in possession of an instrument is entitled to enforce the instrument *if* the person seeking to enforce the instrument has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred; the loss of possession was not the result of a transfer by the person or a lawful seizure; and the person cannot reasonably obtain possession of the instrument because the instrument was destroyed or its whereabouts cannot be determined. The statute goes on to provide that the person seeking enforcement of an instrument under Subsection (a) must prove his *right to enforce the instrument.* S.C. Code Ann. § 36-3-309(a)(2). Further, the statute provides "if that proof is made, Section 36-3-308 applies to the case as if the person seeking enforcement had produced the instrument." *Id*.

Nevertheless, as noted earlier, production of the original promissory note has been called by one commentator the "golden rule of foreclosure," Whaley, *supra*, at 322, and it is rare for any jurisdiction to permit judicial foreclosure without production of the promissory note. Borden, 19 NO. 1 WESTLAW J. BANK LENDER LIABILITY at 1-2. Therefore, if the original note is not introduced, a satisfactory reason must be given for failure to do so. *See Id*. Beta has not proved that the purported October 8, 1998 note, which may have extended the maturity date to 2000, ever existed or that Beta or Regions Bank ever had possession of this note. Beta has also not proved that anyone had personal knowledge that the note was in Regions Bank's files when it disappeared, that it was unintentionally lost or mislaid, that it was the property of the person claiming under it (Regions Bank) when it was lost, or that it was unpaid and unsatisfied when lost. *See* Tenn. Code Ann. § 24-8-101; *see also Third Nat. Bank in Knoxville v. Wilson*, 1986 WL 2539, at *1.

The trial court concluded that the Change in Terms Agreement dated October 8, 1999, was sufficient to establish the existence, terms, and disposition of the purported October 8, 1998 promissory note, of which there is no original or photocopy. We are unable to agree with that legal conclusion.

---

[11]Reading the quote above makes it readily apparent that the code at issue in *Buckner* is identical to Tenn. Code Ann. § 24-8-101 quoted earlier.

We have determined the trial court erred in finding that the Change in Terms Agreement dated October 8, 1999, was sufficient to establish the existence, terms, and disposition of the purported October 8, 1998 promissory note, and we have also determined that the record does not contain other competent evidence to prove the lost instrument. Therefore, Beta, as the foreclosing party, failed to carry its burden of proof to establish that it is entitled to enforce the missing or lost note and, thus, it failed to carry its burden of proof to establish that it is entitled to enforce the deed of trust incident thereto.

For the foregoing reasons, we reverse the judgment of the trial court in which it dismissed Plaintiffs petition to quiet title to their property by releasing the deed of trust and ruling in favor of Beta on its judicial foreclosure claim.

## V. PLAINTIFFS' PRAYER FOR RELEASE OF THE DEED OF TRUST

Plaintiffs filed this action to quiet title, specifically to obtain the release of the deed of trust encumbering their property. The trial court denied Plaintiffs' claim for relief finding that Beta was entitled to enforce the deed of trust. We have determined Beta failed to establish that it is the person entitled to enforce the note; accordingly, Beta is not entitled to enforce the thing that is incident to the note, the deed of trust. *See* S.C. Code Ann. § 36-3-204(a) and (c) and § 36-3-301(i); *see also W.C. Early Co.*, 186 S.W. at 103-04 and Whaley, *supra*, at 326-27 (holding that the security follows the debt).

For the foregoing reasons, we respectfully reverse the dismissal of Plaintiffs' claim for relief and, therefore, Plaintiffs' complaint to quiet title is reinstated and is remanded to the trial court for further proceedings consistent with this opinion.

## IN CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded. Costs of appeal assessed against the Appellees, Sound Marketing, LLC., and Beta, LLC.

_____
FRANK G. CLEMENT, JR., JUDGE